

# IN THE
# TENTH COURT OF APPEALS

### No. 10-23-00173-CV

**CORYELL COUNTY,**

                                           **Appellant**

 **v.**

**H&S PERRYMAN RANCH, LLC,**

                                           **Appellee**

---

**From the 440th District Court**
**Coryell County, Texas**
**Trial Court No. DC-22-53522**

---

## MEMORANDUM  OPINION

---

In two issues, appellant, Coryell County, contends that the trial court erred by denying its plea to the jurisdiction based on governmental immunity because appellee, H&S Perryman Ranch, LLC ("Perryman"), failed to plead a waiver of governmental immunity for its claim under the Uniform Declaratory Judgment Act ("UDJA"), and because Perryman failed to plead an inverse-condemnation claim that falls within the waiver of governmental immunity of article I, section 17 of the Texas Constitution.  *See*

TEX. CONST. art. I, § 17.  Because we conclude that Perryman failed to plead a waiver of governmental immunity as to both of its claims, we reverse and render.

## Background

Perryman has maintained an 1,100-acre cattle ranch in Coryell County since the 1860s.  This dispute involves an approximate 1.3-mile stretch of County Road 56 that traverses the Perryman Ranch.[1]

Jeff Dewald Construction owns the parcel of land located to the east of the Perryman Ranch.  As part of a real-estate-development plan, Dewald has subdivided its tract of land.  Dewald applied for and received driveway permits from Coryell County that allow Dewald to build driveways from the subdivided lots to the section of County Road 56 that is in dispute.

In the trial court, Perryman argued that Dewald's driveways would traverse sections of the Perryman Ranch that are not contained within the public right-of-way for County Road 56 and would result in a taking of Perryman's property.  Specifically, in its original petition, Perryman:  (1) sought a declaration under the UDJA as to the width of County Road 56 and the validity of the driveway permits issued to Dewald; (2) requested the issuance of a permanent injunction against Dewald until Perryman's UDJA claim is

---

[1] Perryman alleged that County Road 56 is a 12-foot-wide road that is contained in between land on the Perryman Ranch that is fenced off on both sides, approximately sixty feet apart.

resolved; (3) asserted a claim for trespass against Dewald; and (4) asserted a claim for inverse condemnation against Coryell County.[2]

In response, Coryell County filed a plea to the jurisdiction, arguing that Perryman's UDJA claim does not fall within any waiver of the County's governmental immunity and that Perryman's inverse-condemnation claim was improperly pled and does not fall within the Texas Constitution's waiver of governmental immunity for inverse-condemnation claims.

Perryman amended its original petition to include two additional exhibits and also filed a response to Coryell County's plea to the jurisdiction. In its response, Perryman alleged that the UDJA grants any litigant whose rights are affected by a statute the opportunity to obtain a declaration as to those rights and that because Coryell County was a necessary party to the dispute, Coryell County's governmental immunity was waived.

Thereafter, the trial court heard Coryell County's plea to the jurisdiction. At the conclusion of the hearing, the trial court took the matter under advisement. Both parties submitted post-hearing briefs. The trial court ultimately denied Coryell County's plea to the jurisdiction in a docket entry.[3] This accelerated, interlocutory appeal followed.

---

[2] Dewald has filed a brief characterizing itself as a "real party in interest." However, because Dewald is not a party to this appeal, we have not considered any contentions made by Dewald in its brief.

[3] Ordinarily, a docket entry forms no part of the record which may be considered; it is a memorandum made for the trial court and clerk's convenience. *See Energo Int'l Corp. v. Modern Indus. Heating Inc.*, 722 S.W.2d 149, 151 (Tex. App.—Dallas 1986, no writ); *Azopardi v. Hollebeke*, 428 S.W.2d 167,

Coryell County v. H&S Perryman Ranch, LLC                                                                              Page 3

## Standard of Review

A plea to the jurisdiction seeks dismissal of a case or a cause of action for lack of subject-matter jurisdiction. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject-matter jurisdiction involves a court's power to hear a case or cause of action. *Tellez v. City of Socorro*, 226 S.W.3d 413, 413 (Tex. 2007) (per curiam).

"When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009) (internal quotations & citations omitted). "When a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo*." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

---

168 (Tex. Civ. App.—Waco 1968, no writ). This is because docket entries lack the formality of orders and judgments and, thus, are inherently unreliable. *Energo Int'l Corp.*, 722 S.W.2d at 151 n.2. However, docket entries may be used in certain situations to supply facts. *See N-S-W Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex. 1977). A docket entry may constitute a final judgment or decree if it specifically indicates the present rendition of judgment. *See Buffalo Bag Co. v. Joachim*, 704 S.W.2d 482, 484 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (noting that a docket entry containing "to be" language indicates future action is to take place and therefore does not indicate entry of a final judgment); *see also Foster v. Foster*, No. 14-96-01051-CV, 1998 Tex. App. LEXIS 761, at *9 (Tex. App.—Houston [14th Dist.] Feb. 5, 1998, no pet.) (mem. op.) ("In order for a docket entry to create a final judgment or decree it must specifically indicate the present rendition of judgment.").

In this case, the trial court's docket entry includes the following language indicating the present rendition of judgment: "After considering the pleadings, briefs & arguments of counsel from previous hearing, Court hereby <u>Denies</u> Coryell County's plea to the jurisdiction." (Emphasis in original). The trial judge then initialed the ruling. We conclude that this is enough to constitute a final judgment from which Coryell County could appeal.

## Immunity

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability from money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). Under the common-law doctrine of sovereign immunity, the State cannot be sued without its consent. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006)). Like sovereign immunity, governmental immunity affords similar protection to subdivisions of the State, including counties, cities, and school districts. *See LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 208 (Tex. App.—Dallas 2012, no pet.); *see also City of Cleburne v. RT Gen., LLC*, No. 10-20-00037-CV, 2020 Tex. App. LEXIS 9917, at *5 (Tex. App.—Waco Dec. 16, 2020, no pet.) (mem. op.).

Governmental immunity has two components: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity; and (2) immunity from suit, which bars suits against the entity altogether. *See Palasota*, 362 S.W.3d at 208; *see also City of Cleburne*, 2020 Tex. App. LEXIS 9917, at **5-6. Immunity from suit deprives the court of subject-matter jurisdiction and is properly raised in a plea to the jurisdiction, whereas immunity from liability is asserted as an affirmative defense. *See Miranda*, 133 S.W.3d at 224; *see also Palasota*, 362 S.W.3d at 208. "Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit." *Tex. Natural Res.*

*Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). "If the Legislature has not expressly waived immunity from suit, the State retains such immunity even if its liability is not disputed." *Id.* "Immunity from liability protects the State from money judgments even if the Legislature has expressly given consent to sue." *Id.*

### Perryman's UDJA Claim

In its first issue, Coryell County contends that the trial court erred by denying the County's plea to the jurisdiction because Perryman failed to plead a waiver of governmental immunity for its claim under the UDJA. We agree.

In its live pleading, Perryman alleged that Coryell County's immunity was waived because it is "a necessary party to a statutory cause of action, such as an action under the Declaratory Judgment Act for interpretation of a statute." However, in its declaratory-judgment claim, Perryman did not challenge the validity or interpretation of a statute.[4] *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620-22 (Tex. 2011) (noting that "sovereign immunity bars UDJA actions brought against the state and its political subdivisions absent a legislative waiver" and explaining that the UDJA waiver sovereign immunity if the state is "a proper party to a declaratory judgment action that challenges the validity of a statute"); *see also Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019) ("As

---

[4] Perryman also did not allege an ultra-vires claim against the members of the Coryell County Commissioners Court or a petition for writ of mandamus seeking to compel said members to comply with section 251.007 of the Texas Transportation Code.

the court of appeals recognized, the UDJA does not contain a general waiver of sovereign immunity, providing only a limited waiver for challenges to the validity of an ordinance or statute."). Rather, Perryman alleged that Coryell County did not properly classify and define the width of County Road 56 under section 251.007(a) of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 251.007(a) ("The commissioners court of each county shall classify each public road in the county as a first-class, second-class, or third-class road.")[5]; *see also Sefzik*, 355 S.W.3d at 620-22 ("But Sefzik is not challenging the validity of a statute; instead, he is challenging TxDOT's actions under it, and he does not direct us to any provision of the UDJA that expressly waives immunity for his claim."); *Heinrich*, 284 S.W.3d at 371 ("It is well settled that 'private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages . . . as a declaratory-judgment claim.'" (quoting *IT-Davy*, 74 S.W.3d at 856))).

---

[5] Pursuant to section 251.007 of the Texas Transportation Code, the commissioners court of each county shall classify public roads in the county as follows:

(c) A first-class road must not be less than 40 feet wide or more than 100 feet wide. The causeway on a first-class road must be at least 16 feet wide.

(d) A second-class road and a causeway on a second-class road must meet the requirements applicable to a first-class road.

(e) A third-class road must meet the requirements applicable to a first-class road, except that:

(1) a third-class road may be less than 40 but not less than 20 feet wide; and

(2) the causeway on a third-class road may be less than 16 but not less than 12 feet wide.

TEX. TRANSP. CODE ANN. § 251.007(c)-(e).

Furthermore, Perryman cannot rely on section 37.006(b) of the UDJA to assert a waiver of immunity because Coryell County is not a municipality. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b)[6]; *see also Dawson v. Fort Bend Cnty.*, No. 14-21-00174-CV, 2022 Tex. App. LEXIS 2243, at *6 n.8 (Tex. App.—Houston [14th Dist.] Apr. 7, 2022, pet. denied) (mem. op.) ("Dawson also argues at times the applicability of section 101.0215, which addresses the liability of a municipality for its proprietary functions. However, the County is not a municipality and statutes relating to municipalities do not apply." (internal citations omitted)); *EMCF Partners, LLC v. Travis County*, No. 03-15-00820-CV, 2017 Tex. App. LEXIS 1261, at *17 n.8 (Tex. App.—Austin Feb. 15, 2017, no pet.) (mem. op.) ("[T]he UDJA waives a municipality's immunity in a suit 'involving the validity of a municipal ordinance or franchise.' The present suit was brought against Travis County, which is not a municipality." (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b))).

Perryman also argues on appeal that it does not need to plead a waiver of immunity because governmental immunity is not invoked. Specifically, Perryman

---

[6] Section 37.006(b) of the UDJA states that:

In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.

TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b). Notwithstanding the fact that Coryell County is not a municipality, we once again emphasize that Perryman does not challenge the validity of section 251.007 of the Texas Transportation Code; rather, Perryman complains about the failure of the members of the Coryell County Commissioners Court to comply with the statute. Thus, Perryman cannot rely on section 37.006(b) to demonstrate a waiver of Coryell County's governmental immunity.

contends that the use of the UDJA to determine the rights of the parties is not a suit against the State because it does not seek to impose liability upon the State.

First, we emphasize that governmental immunity includes not only immunity from liability, which is the focus of Perryman's contention here, but also immunity from suit, which is the true crux of this dispute. *See Palasota*, 362 S.W.3d at 208; *see also City of Cleburne*, 2020 Tex. App. LEXIS 9917, at **5-6.

Second, we note that the argument made by Perryman in this contention has been rejected by the Texas Supreme Court. *See Sefzik*, 355 S.W.3d at 621-22. In *Sefzik*, the Texas Supreme Court discussed *Heinrich* and stated that:

> As noted, we dismissed Heinrich's claims seeking declaratory and injunctive relief against governmental entities, brought under the UDJA, because the entities were immune. In so doing, we necessarily concluded that the UDJA does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law. Very likely, the same claim could be brought against the appropriate state official under the ultra vires exception, but the state agency remains immune. As we have consistently stated, the UDJA does not enlarge the trial court's jurisdiction but it merely a procedural device for deciding cases already within a court's jurisdiction.

355 S.W.3d at 621-22 (internal citations & quotations omitted).

Despite the foregoing, Perryman relies heavily on a case from the First Court of Appeals to support its contention that a UDJA claim does not implicate governmental immunity. *See County of Galveston v. Tolle*, 176 S.W.3d 859, 862-63 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). In *Tolle*, a case that pre-dated *Sefzik*, the First Court of Appeals relied on *IT-Davy* for the proposition that "[d]eclaratory judgment actions by

private parties seeking to determine their rights under a statute are not suits against the State because they do not attempt to impose liability upon the State" and, thus, "do not implicate the doctrine of sovereign immunity." *Id.* at 862 (citing *IT-Davy*, 74 S.W.3d at 855). However, the holding in *IT-Davy* was narrower than expressed in *Tolle*. In *IT-Davy*, the Texas Supreme Court held that:

> Private parties may seek declaratory relief against *state officials* who allegedly act without legal or statutory authority. . . . This is because suits to compel state officers to act within their official capacity do not attempt to subject the State to liability. Therefore, certain declaratory-judgment actions against *state officials* do not implicate the sovereign-immunity doctrine.

74 S.W.3d at 855 (emphasis added) (internal citations omitted).

Here, Perryman has not sued any governmental officials, but rather sued Coryell County generally. Given this, we are not persuaded by Perryman's reliance on *Tolle*. And furthermore, based on the foregoing, we are not persuaded by Perryman's contention that the UDJA waived Coryell's County's governmental immunity.

Alternatively, Perryman alleges on appeal that section 258.004 of the Texas Transportation Code waives Coryell County's governmental immunity.

Section 258.004 of the Texas Transportation Code provides that:

> A person asserting a private right, title, or interest in a road in which the existence of a public interest is asserted under this chapter may contest the inclusion of the road in the county road map by filing a suit in a district court in the county in which the road is located not later than the second anniversary of the date on which the county road map including the road was adopted.

TEX. TRANS. CODE ANN. § 258.004.  In *Coryell County v. Harrell*, this Court concluded that "[t]he Legislature has thus expressly waived immunity from suit when a private person is challenging the county's assertion of a public interest in a road by including the road in a Chapter 258 county road map."  379 S.W.3d 345, 349 (Tex. App.—Waco 2011, no pet.).

In this case, Perryman does not challenge the inclusion of County Road 56 in a Chapter 258 county road map.  Rather, Perryman argues that Coryell County failed to classify County Road 56 in accordance with section 251.007 of the Texas Transportation Code and seeks a declaration from the trial court as to the width of County Road 56.  That argument, coupled with the fact that Coryell County adopted County Road 56 as part of its county road map in 2009, approximately thirteen years before Perryman filed its original petition in this case, does not work to waive Coryell County's immunity as to Perryman's UDJA claim.

We therefore conclude that the trial court erred by denying Coryell County's plea to the jurisdiction as to Perryman's UDJA claim.  We sustain Coryell County's first issue.

### Perryman's Inverse-Condemnation Claim

In its second issue, Coryell County asserts that Perryman failed to plead an inverse-condemnation claim that falls within the waiver of governmental immunity in article I, section 17 of the Texas Constitution.  *See* TEX. CONST. art. I, § 17.

Article I, section 17 of the Texas Constitution waives governmental immunity for valid inverse-condemnation claims.  *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39

S.W.3d 591, 598 (Tex. 2001); *see City of Dallas v. Blanton*, 200 S.W.3d 266, 271 (Tex. App.—Dallas 2006, no pet.). Inverse condemnation occurs when property is taken for public use without proper condemnation proceedings and the property owner attempts to recover compensation for that taking. *Blanton*, 200 S.W.3d at 271 (citing *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex. 1971)). An inverse condemnation may occur when a governmental entity physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development. *See Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992).

To properly assert an inverse-condemnation claim against a governmental entity, a party must plead facts establishing the following elements: (1) the governmental entity intentionally performed an act in the exercise of its lawful authority; (2) that resulted in the taking, damaging, or destruction of the party's property; (3) for public use. *Little-Tex Insulation Co.*, 39 S.W.3d at 598. Whether particular facts are sufficient to allege a constitutional taking is a question of law. *Id.*; *see Blanton*, 200 S.W.3d at 272. A plaintiff must allege a valid inverse-condemnation claim to demonstrate a waiver of a governmental entity's immunity from suit. *Blanton*, 200 S.W.3d at 272; *see City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014) ("[I]n the absence of a properly [pleaded] takings claim, the state retains immunity.").

In its live pleading, Perryman alleged that:

> Coryell County intentionally, acting under its authority to grant permits [sic] applications for driveways, granted permits to Dewald to construct the driveways to CR 56 through Perryman Ranch. . . . Coryell County granted these permits with the knowledge that they did not classify the road or know the width of CR 56. Thus, granting the permit application to Dewald to connect the driveways to CR 56 through the Perryman Ranch is a taking for public use that damages the Perryman Ranch. Coryell County has not justly compensated Perryman Ranch for the taking of the property.

As pled by Perryman in the trial court, Coryell County's decision to issue permits to Dewald despite failing to classify or define the width of the road pursuant to section 251.007 of the Texas Transportation Code does not demonstrate that Coryell County intended to take Perryman's property. *See Kerr*, 499 S.W.3d at 799-800 ("Only affirmative conduct by the government will support a takings claim," and the "government cannot be liable for a taking if 'it committed no intentional acts.'" (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997))). At best, Coryell County's alleged actions in this case may amount to negligence, which is not enough to establish a takings claim for which immunity is waived. *See id.* at 795-97, 799, 806 (noting that "the government must know that a specific act is causing identifiable harm or know that the harm is substantially certain to result and concluding that allegations that the Harris County Flood Control District's approved unmitigated upstream development and failed to implement a specific flood control plan did not support a takings claims because, among other reasons, there was no "conscious decision to damage certain private property for a public use"); *City of Dallas v. Jennings*, 142 S.W.3d 310, 313-14 (Tex. 2004) (noting that "[w]hen damage is merely the accidental result of the government's act, there is no public benefit and the

property cannot be said to be taken or damaged for public use" and that a taking occurs when property is "damaged for public use" in circumstances where "a governmental entity is aware that its action will necessarily cause physical damage to certain private property") (internal quotations, citations, and emphasis omitted); *see also Trevino v. Tepper*, No. 13-22-00568-CV, 2023 Tex. App. LEXIS 8122, at *10 (Tex. App.—Corpus Christi Oct. 26, 2023, no pet.) (mem. op.) ("Thus, Tepper's claim does not rest on an affirmative intentional action; rather, it rests on the County's failure to implement a specific plan that would protect his future investment.  Such a claim does not support a taking by inverse condemnation."); *Tex. Dep't of Transp. v. Self*, 2022 Tex. App. LEXIS 2844, at *58 (Tex. App.—Fort Worth Apr. 28, 2022, pet. granted) ("Though cutting down a tree is an intentional act, the proof is lacking that TxDOT intended to cut down those of the Selfs' trees beyond the right-of-way or was substantially certain that any trees on their private property would be cut down.").

Accordingly, we hold that Perryman has failed to plead a proper inverse-condemnation claim under article I, section 17 of the Texas Constitution.  And as such, we conclude that the trial court erred by denying Coryell County's plea to the jurisdiction as to Perryman's inverse-condemnation claim.  We sustain Coryell County's second issue.

**Conclusion**

Having sustained both of Coryell County's issues, we reverse the trial court's order denying Coryell County's plea to the jurisdiction as to Perryman and render a judgment of dismissal with prejudice in favor of Coryell County.[7]


STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
(Chief Justice Gray dissents.)
Reversed and rendered
Opinion delivered and filed January 4, 2024
[CV06]



---

[7] Perryman did not request an opportunity to replead in the event that this Court concluded that Coryell County's governmental immunity remains intact and that the trial court erred by denying Coryell County's plea to the jurisdiction. However, even if Perryman had made such a request, we cannot say that remanding for the opportunity to replead would cure the jurisdictional defects in this case. As noted above, Perryman has not directed us to a valid waiver of Coryell County's governmental immunity as to Perryman's UDJA claim. And with respect to Perryman's inverse-condemnation claim, we emphasize that said claim is premised not only on an intentional taking by Coryell County for which the evidence is lacking, but also on a proper classification and determination of the width of County Road 56 under section 251.007 of the Texas Transportation Code for which Perryman has not demonstrated a valid waiver of governmental immunity. As such, remanding for an opportunity to replead would serve no legitimate purpose. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("Accordingly, the court of appeals erred when it concluded Koseoglu, who has not obtained legislative consent to sue, may be able to state a cause of action for which sovereign immunity has been waived and remanded the cause to give Koseoglu an opportunity to amend."); *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (instructing that a plaintiff's suit should be dismissed when either the pleadings alone or the jurisdictional evidence demonstrates that the plaintiff's suit incurably falls outside any waiver of sovereign immunity).